**CENTRAL STATES INDUSTRIAL SUPPLY, INC. and CPI Sales, Inc., Plaintiffs,**

v.

**Steve MCCULLOUGH, Defendant.**

**No. C02–0052–MWB.**

United States District Court, N.D. Iowa, Cedar Rapids Division.

Aug. 26, 2002.

Mark Zaiger, Huttleworth & Ingersoll, Cedar Rapids, IA, for Plaintiffs.

Scott Long, Rebecca Brommel, Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, Des Moines, IA, for Defendant.

MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS FOR IMPROPER VENUE AND ALTERNATIVE MOTION TO STAY PROCEEDINGS

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *PROCEDURAL AND FACTUAL BACKGROUND* ............................1076
 A. *Procedural Background* ..........................................1076
 B. *Factual Background* .............................................1076
 1. *The parties and their agreements* ..............................1076
 2. *The Nebraska lawsuit* .........................................1078
 3. *The Iowa lawsuit* .............................................1079

II. *LEGAL ANALYSIS* ...................................................1079
 A. *Venue* .........................................................1079
 1. *Improper venue* ...............................................1079
 2. *Forum non conveniens* .........................................1080
 B. *Abstention Generally* ..........................................1083
 C. *Colorado River Abstention* .....................................1084
 D. *Is Colorado River Abstention Appropriate?* .....................1085
 1. *The "parallel litigation" prerequisite* ......................1085
 a. *Arguments of the parties* ..................................1085
 b. *Parallelism* ...............................................1086
 c. *Analysis* ..................................................1088
 E. *Application of the First–Filed Rule* ...........................1091
 1. *The first-filed rule* ........................................1091
 2. *Separate courts* .............................................1092

III. *CONCLUSION* ......................................................1094

## I. PROCEDURAL AND FACTUAL BACKGROUND

### A. Procedural Background

This litigation is before the court pursuant to the April 29, 2002, motion of defendant Steve McCullough, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) on the basis of improper venue or to stay these proceedings pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), and the principles of comity and federalism, in favor of another action brought by McCullough in Nebraska state court. On May 13, 2002, plaintiffs Central States Industrial Supply, Inc. (Central States) and CPI Sales, Inc. (CPI) resisted McCullough's motion, and on May 20, 2002, McCullough filed a reply in further support of his motion. McCullough timely requested oral argument on the motion to dismiss. The court granted that request and held oral arguments on McCullough's motion on August 20, 2002. At the hearing, defendant McCullough was represented by Scott Long and Rebecca Brommel of Brown, Winick, Graves, Gross, Baskerville and Schoenebaum of Des Moines, Iowa. Plaintiffs Central States and CPI were represented by Mark Zaiger of Shuttleworth & Ingersoll of Cedar Rapids, Iowa. This matter is now fully submitted.

### B. Factual Background

#### 1. The parties and their agreements

The factual background for disposition of McCullough's motion to dismiss or stay

proceedings is based on the facts as gleaned from Central States's and CPI's complaint in this lawsuit in federal court and McCullough's brief in support of its motion to dismiss or stay, as well as supporting documents. In their complaint in this court, Central States avers it is a Nebraska corporation with its principal place of business in Omaha, Nebraska, and CPI, its wholly owned subsidiary, is an Iowa corporation with its principal place of business in Cedar Rapids, Iowa. Central States and CPI contend that it was McCullough's conduct while he was a resident and citizen of Iowa and employed by CPI, an Iowa corporation located in Cedar Rapids, Iowa, under an Iowa contract, that gave rise to their claims. Central States and CPI acknowledge that McCullough was a Minnesota resident and citizen at the time this lawsuit was filed. The lawsuits between the parties are not mirror images of each other, but do involve similar factual and legal issues as described below. Two agreements between the parties are in dispute: an Employment Agreement and a Stock Repurchase Agreement with an Addendum.

Central States and CPI allege that CPI entered into a written Employment Agreement with McCullough on January 5, 1998, as a condition precedent to Central States purchase of CPI. *See* Pl.'s Compl., at Ex. A. The salient terms of the Employment Agreement consist of a proprietary information clause and a three-year covenant not to compete clause. Pl.'s Compl., at Ex. A, para. 5–6. With regard to the proprietary information clause, Central States and CPI allege the Employment Agreement acknowledged the existence of CPI's confidential, proprietary business information and trade secrets and imposed restrictions upon the removal, retention and disclosure of such information by the undersigned employee—in this case McCullough. Pl.'s Compl., at Ex. A, para. 5. The Employment Agreement contains no forum selection clause, although it does contain a choice-of-law clause that provides, "[t]his employment arrangement shall be governed by the laws of the State of Iowa." Pl.'s Compl., at Ex. A, para. 9.

On or about October 5, 1999, Central States and CPI entered into a written contract with McCullough, called a Stock Repurchase Agreement, as an incentive to him to further the interests of CPI. Def.'s Mot. to Dismiss or Stay, at Ex. 1, Ex. A. This agreement authorized McCullough to purchase 114 shares of CPI for $120,000. The agreement identifies circumstances which would compel McCullough to sell back his shares to CPI and trigger an obligation on the part of CPI to repurchase McCullough's shares. The agreement also contemplates the procedure for determining the price of the shares and the method of payment. The Stock Repurchase Agreement contains a three-year covenant not to compete provision with largely the same or similar language contained in the Employment Agreement.[1]

1. The additional terms, not set forth in the covenant not to compete clause of the Employment Agreement, but contained in the covenant not to compete clause of the Stock Repurchase Agreement are as follows:

 If the Employee leaves the employment with CPI Sales, Inc., whether voluntarily or involuntarily, and within 3 years of so leaving, directly or indirectly, recruits, hires, solicits or encourages any employee of the Corporation to leave his or her employment with the Corporation or engages in any of the activities set forth in the first paragraph of this section, the Corporation may require the employee to forfeit all amounts to which he would be entitled above the initial $120,000 purchase price, and to the extent that payments above that amount may have been already made to him, the Corporation shall be entitled to repayment of all such amounts and may take whatever legal measures may be necessary to recover the same.

 Def.'s Mot. to Dismiss or Stay, at Ex. 1, Ex. A.

Unlike the Employment Agreement, the Stock Repurchase Agreement includes a provision that is both a choice-of-law and a forum selection clause, because it states,

> This Agreement shall be construed and enforced in accordance with the laws of the State of Nebraska and it is hereby irrevocably agreed that all actions, suits or proceedings, in connection with or relating to this Agreement shall be litigated only in the State or Federal Courts, in the county of Douglas, in the State of Nebraska, U.S.A.

Def.'s Mot. to Dismiss or Stay, at Ex. 1, Ex. A.

The parties executed another written contract, called an Addendum to Stock Repurchase Agreement, on or about April 12, 2000. Def.'s Mot. to Dismiss or Stay, at Ex. 1, Ex. B. The Addendum provided for the issuance of an additional twenty-one shares to McCullough in order for McCullough to become a 15% owner of CPI. The Addendum provided that the additional shares issued to McCullough, and all other provisions therein, would be bound by the terms and conditions of the original Stock Repurchase Agreement. Def.'s Mot. to Dismiss or Stay, at Ex. 1, Ex. B.

Central States and CPI allege McCullough continued his employment with CPI until July of 2001, when he voluntarily terminated his position with CPI and commenced employment with Fluid Solutions, Inc., a Minnesota corporation and a wholly owned subsidiary of Custom Fabricators. After McCullough's departure from CPI, two lawsuits were instituted in two separate fora, one on behalf of McCullough alleging the failure of Central States and CPI to perform their payment obligations under the Stock Repurchase Agreement and Addendum, and one on behalf of Central States and CPI alleging breach of the Employment Agreement.

### 2. The Nebraska lawsuit

On January 24, 2002, McCullough filed a complaint against Central States, CPI, Steve Anderson, and Dick Stenger in Nebraska District Court for Douglas County. Count I alleges a breach of the Stock Repurchase Agreement by Central States and CPI for failure to perform their payment obligations thereunder. Count II seeks to enforce the provision in the Stock Repurchase Agreement which requires specific performance in the event the agreement is breached.[2] Count III alleges a violation of the Nebraska Wage Payment and Collection Act, § 48–1231. Lastly, Count IV alleges a breach of fiduciary duties by Steve Anderson and Dick Stenger as officers, directors, and/or majority shareholders in CPI owing to McCullough as a minority shareholder. Def.'s Mot. to Dismiss or Stay, at Ex. 1. McCullough demanded judgment in an amount not less than $238,000 plus interest, and requested that the Nebraska court require Central States and CPI to specifically perform pursuant to the terms of the Stock Repurchase Agreement.

On February 28, 2002, Central States and CPI filed an Answer to Count I and a Demurrer to Counts II, III, and IV in the Nebraska lawsuit. On April 8, 2002, oral arguments were heard on the demurrers and the court in the Nebraska lawsuit denied Central States's and CPI's demurrer to Count II; sustained the demurrer to Counts III and IV; and granted McCullough an extension of time to amend his

---

**2.** The relevant provision provides:

The parties agree that money damages are an inadequate remedy for the breach of any agreement hereunder relating to the purchase and sale of any shares. The provi-

sions of the Agreement and of any note or other agreement or instrument made or entered into pursuant to this Agreement shall be specifically enforceable.

Def.'s Mot. to Dismiss or Stay, Ex. 1, at Ex. A.

complaint. Def.'s Mem. of Law in Support of Mot. to Dismiss or Stay, at 3. McCullough served Requests for Production on Central States and CPI on or about April 8, 2002, and Central States and CPI served McCullough with Interrogatories on or about April 16, 2002. Def.'s Mem. of Law in Support of Mot. to Dismiss or Stay, at 3–4.

### 3. The Iowa lawsuit

On March 21, 2002, Central States and CPI filed the present action in this federal court. Count I alleges a breach of the Employment Agreement as a result of McCullough's "removal and retention of confidential business and proprietary trade secret information and property," and as a consequence of his employment with Fluid Solutions, Inc. Pl.'s Compl., at 5. Count II alleges a breach of the Employment Agreement due to McCullough's disclosure of CPI's confidential matters in the course of his employment with Fluid Solutions, Inc., in contravention of Paragraph Five of the Employment Agreement. Count III alleges that McCullough engaged in the misappropriation of CPI's trade secrets in violation of Iowa Code § 550.2(3). Finally, Count IV alleges McCullough breached his fiduciary "duty of loyalty and his duty not to take for unauthorized purposes or to disclose information that his employer regarded as confidential." Pl.'s Compl., at 9. Count IV is also based on allegations that McCullough solicited and enticed employees of CPI to leave their employment and go to work for Fluid Solutions, Inc., a direct competitor. Central States and CPI request a permanent injunction against McCullough enforcing the provisions of the Employment Agreement protecting against removal, retention and direct or indirect use of confidential information, trade secrets, and other CPI property as well as monetary damages. Additionally, Central States and CPI seek a permanent injunction against McCullough to prohibit his continued misappropriation of CPI's trade secrets; monetary damages to compensate for the resulting irreparable harm; exemplary and punitive damages; and attorney fees.

McCullough has not yet answered Central States's and CPI's Complaint in this action. On April 16, 2002, pursuant to an administrative order in this district, the Clerk of Court granted McCullough's unresisted motion of April 15, 2002, to extend the time to answer Central States's and CPI's Complaint until April 29, 2002. However, on the deadline to answer Central States's and CPI's Complaint, McCullough instead filed this motion to dismiss or stay proceedings, the present focus of the court's attention.

## II. LEGAL ANALYSIS

### A. Venue

#### 1. Improper venue

McCullough seeks to have this court dismiss Central States's and CPI's complaint on the ground of improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Central States and CPI allege in their complaint that venue is proper in this district pursuant to 28 U.S.C. § 1391(b), which governs civil actions "wherein jurisdiction is not founded solely on diversity of citizenship." 28 U.S.C. § 1391(b). However, Central States and CPI allege that diversity jurisdiction exists in this action pursuant to 28 U.S.C. § 1332(a)(2).[3] Therefore, in this case, the court finds that

---

**3.** The relevant statutory language follows:
(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and

costs, and is between—... (2) citizens of a State and citizens or subjects of a foreign state; ...
28 U.S.C. § 1332(a)(2).

the governing venue provision is not codified at 28 U.S.C. § 1391(b), but rather at 28 U.S.C. § 1391(a), which provides:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).

 In *Setco Enters., Corp. v. Robbins*, 19 F.3d 1278 (8th Cir.1994), the Eighth Circuit Court of Appeals stated that under the amended venue statute,[4] "we no longer ask which district is the best among two or more potential forums." *Setco*, 19 F.3d at 1281. Rather, the Eighth Circuit Court of Appeals stated "we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Id.* In the present case, neither side offers arguments either for or against the dismissal of the present action on the basis of improper venue, but instead couch their arguments in terms of *forum non conveniens* pursuant to 28 U.S.C. § 1404(a). However, application of section 1404 governing transfers of actions "for the convenience of parties and witnesses" is necessarily limited to the transfer of actions commenced in a district court where both personal jurisdiction and venue

are proper. *Reid–Walen v. Hansen*, 933 F.2d 1390, 1393 (8th Cir.1991). In light of the facts, including McCullough's residing in Iowa, being employed with CPI, an Iowa corporation located in Cedar Rapids Iowa, under an Iowa contract, the court finds that a substantial part of the events giving rise to this claim occurred in this judicial district making venue proper pursuant to 28 U.S.C. § 1391(a). Therefore, the court will analyze this action, as do the parties, pursuant to the *forum non conveniens* doctrine.

### 2. Forum non conveniens

 Under the doctrine of *forum non conveniens*, " 'when an alternative forum has jurisdiction to hear [a] case, and when trial in the chosen forum would establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience, or when the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems, 'the court may, in the exercise of its sound discretion,' dismiss the case, even if jurisdiction and proper venue are established.' " *American Dredging Co. v. Miller*, 510 U.S. 443, 447–48, 114 S.Ct. 981, 127 L.Ed.2d 285, (1994), (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). It is a discretionary doctrine which vests in the district courts the power to abstain from the exercise of jurisdiction "even where authorized by statute if 'the litigation can more appropriately be conducted in a foreign tribunal.' " *De Melo v. Lederle Labs.*, 801 F.2d 1058, 1060 (8th Cir.1986); *See also Mizokami Bros. of Arizona v. Mobay Chemical Corp.*, 660 F.2d 712, 717 (8th Cir.1981) (quoting *Dahl v. United Technologies*

---

4. In 1990, Section 1391(a)(2) was amended to provide that venue was proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* Judicial Improvements Act of 1990, Pub.L. 101–650, Title III, § 311, 104 Stat. 5114 (codified at 28 U.S.C. § 1391(a)(2)).

*Corp.*, 632 F.2d 1027, 1029 (3d Cir.1980)) ("The principle of *forum non conveniens* permits a court to decline jurisdiction even though venue and jurisdiction are proper, on the theory that for the convenience of the litigants and witnesses, the action should be tried in another forum."); *American Dredging Co. v. Miller*, 510 U.S. 443, 449, n. 2, 114 S.Ct. 981, 986, n. 2, 127 L.Ed.2d 285 (1994) (explaining that to the extent we [the Court] have continued to recognize that federal courts have the power to dismiss damages actions under the common-law *forum non conveniens* doctrine, we [the Court] have done so only in "cases where the alternative forum is abroad.").

■■■ The principles that govern a motion to dismiss on *forum non conveniens* grounds are well settled. The Court must first determine whether there is an adequate alternative forum available in which the dispute can be resolved. If there is such a forum, the Court must balance a number of factors in order to determine whether they outweigh the deference ordinarily attended to the plaintiff's choice of forum. *See Mizokami Bros. of Arizona,* 660 F.2d at 717–18. In the seminal decision of *Gulf Oil v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Court enumerated a nonexhaustive list of factors which must be considered in the *forum non conveniens* equation. The Court categorized these considerations into "private interest," and "public interest" factors. The private interest factors consist of the following:

1) relative ease of access to sources of proof;

2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;

3) possibility of view of the premises, if view would be appropriate to the action; and

4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839. The public interest factors consist of the following:

1) administrative difficulties flowing from court congestion;

2) the forum's interest in having localized controversies decided at home;

3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and

5) the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839).

■ Under this analysis, the defendant bears the ultimate burden of persuasion in satisfying the court that a *forum non conveniens* dismissal is appropriate. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.,* 51 F.3d 1383, 1389 (8th Cir.1995). In addition, the Eighth Circuit Court of Appeals reiterated that the "central principle of the *Gilbert* doctrine" is that, in weighing these factors, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Reid–Walen v. Hansen,* 933 F.2d 1390, 1394 (8th Cir.1991) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839).

■■ As articulated above, the doctrine of *forum non conveniens* presupposes that an adequate alternative forum is available to hear the case. *Reid–Walen v. Hansen,* 933 F.2d at 1393 n. 2. This is a

two-part inquiry: availability and adequacy. *Id.* (citing *In re Air Crash Disaster Near New Orleans, La.,* 821 F.2d 1147, 1165 (5th Cir.1987) (en banc)), partially vacated on other grounds, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). Generally, an alternate forum will be considered adequate when the defendant is "amenable to process" there. *See Gulf Oil,* 330 U.S. at 506–07, 67 S.Ct. at 842; *see also R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir.1991) (citing *Piper Aircraft v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). Central States and CPI argue that Nebraska state court is not an adequate forum because they allege their requests for punitive damages and attorneys fees—statutory remedies under Iowa law, would be denied by a Nebraska court as against public policy. McCullough argues that because Central States and CPI have already appeared before the Nebraska state court without any challenge to jurisdiction, Nebraska is an adequate alternative forum that can afford Central States and CPI complete relief. The court will first turn to the private and public factors and determine whether they favor dismissal.

■ McCullough's primary contention why the Northern District of Iowa is an inconvenient forum is premised on the fact that a Nebraska state court case with the exact same parties is pending and the present Iowa lawsuit, complaining of, among other things, breach of the Employment Agreement, should be addressed at the same time as the alleged breach of the Stock Repurchase Agreement, the subject of the Nebraska lawsuit, because of the interdependence of the contracts. In this same vein, McCullough asserts that Nebraska law, not Iowa law, applies to the determination of whether the Stock Repurchase Agreement, containing a Nebraska choice-of-law provision and forum selection clause, replaces the Employment Agreement. In addition, a majority of the witnesses and pertinent documentary evidence are primarily located in Nebraska where Central States is incorporated and has its principal place of business. McCullough asserts that although CPI is incorporated in Iowa, for evidentiary purposes, CPI is more appropriately characterized as the wholly owned subsidiary of Central States, a Nebraska corporation. Further, McCullough cites the fact that he is no longer a resident of Iowa, but rather a resident of Minnesota.

Central States and CPI counter, contending that the claims giving rise to the Iowa lawsuit, including contractual, tort and statutory duties, exist by virtue of McCullough's employment in Iowa. Pl.'s Br. in Resistance to Def.'s Mot. to Dismiss or Stay, at 5. Similarly, Central States and CPI argue that McCullough was a resident of Iowa at all times relevant to this action and his alleged removal, retention and direct or indirect use of confidential information, trade secrets, and other CPI property occurred in Iowa and Minnesota, not in Nebraska. Moreover, Central States and CPI assert that the Employment Agreement has an Iowa choice-of-law clause. Further, Central States and CPI allege that, notwithstanding the fact that Central States's corporate headquarters is located in Omaha, Nebraska, the relevant documentary evidence regarding McCullough's actions during his employment with CPI in Cedar Rapids, Iowa, are maintained at CPI.

The court concludes that there is nothing inherent about the Northern District of Iowa's location regarding the parties' themselves that suggests that their convenience favors dismissal. The court has not been presented with any compelling evidence that litigating in Iowa will be more inconvenient to McCullough as a party than litigating in Nebraska will be to Central States and CPI. The court reiterates that under the doctrine of *forum non con-*

*veniens,* the burden of proof for dismissal rests with the defendant. Central States and CPI allege that McCullough improperly shifts his burden of establishing his inconvenience to the plaintiffs' relative convenience of litigating in Nebraska. In this regard McCullough argues that any Central States's or CPI representatives would not be burdened by appearing in a Nebraska forum.

Ultimately, McCullough hinges his argument for *forum non conveniens* on his assertion that the Stock Repurchase Agreement superseded the Employment Agreement, and thus must be interpreted by a Nebraska court because of the Nebraska choice-of-law provision contained in the Stock Repurchase Agreement. On the other hand, the court notes that CPI is incorporated in Iowa, McCullough was employed with CPI at its Cedar Rapids, Iowa, location, and any alleged transgressions on the part of McCullough with regard to the removal and retention of confidential information and property of plaintiffs', discussed previously, took place in Iowa or Minnesota, not Nebraska. Accordingly, Iowa has a genuine and legitimate interest in the resolution of the issue here. Moreover, this case would not impose a burden on the court, and it would not interfere with the rights of the Nebraska based litigants to try the case here. As a result, plaintiffs' chosen forum, Iowa, will not be disturbed. *See Reid–Walen v. Hansen,* 933 F.2d 1390, 1394 (8th Cir.1991) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). Because the court finds that the private and public interest factors do not decidedly weigh in favor of either alternative as the more convenient venue for the present action, it will not disturb the plaintiffs' chosen forum, Iowa. Additionally, the court does not decide whether the Nebraska state court is an adequate alternative forum. Accordingly, McCullough's motion to dismiss pursuant to *forum non conveniens* is denied.

### B. Abstention Generally

In considering defendant's alternative motion to stay the current proceedings, the court is cognizant of federal courts' " 'virtually unflagging obligation' to exercise their jurisdiction in proper cases." *Beavers v. Arkansas State Bd. of Dental Exam'rs,* 151 F.3d 838, 840 (8th Cir.1998) (quoting *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236); *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Coops., Inc.,* 48 F.3d 294, 297 (8th Cir.1995). "This obligation does not evaporate simply because there is a pending state court action involving the same subject matter." *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297 (citing *Colorado River,* 424 U.S. at 813–14, 817, 96 S.Ct. 1236). On the other hand, "[t]his obligation notwithstanding, federal courts may abstain from deciding an issue in order to preserve 'traditional principles of equity, comity, and federalism.' " *Beavers,* 151 F.3d at 840 (quoting *Alleghany Corp. v. McCartney,* 896 F.2d 1138, 1142 (8th Cir.1990)). Whether or not a federal court should abstain from hearing a matter under one of the federal abstention doctrines is a matter in the court's discretion. *See Dominium Austin Partners, L.L.C. v. Emerson,* 248 F.3d 720, 727 (8th Cir.2001) (observing, in a *Colorado River* abstention case, that "[d]ecisions on possible abstention are reviewed for abuse of discretion"); *Beavers,* 151 F.3d at 840 (noting, in a *Pullman* abstention case, that decisions to abstain are reviewed for abuse of discretion, but " '[t]he underlying legal questions ... are subject to plenary review' ") (quoting *Sheerbonnet, Ltd. v. American Express Bank, Ltd.,* 17 F.3d 46, 48 (2d Cir.), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 23 (1994)). However, a federal court may *not* decline to exercise its jurisdiction " 'as a matter of whim or personal disinclination.' " *Federated Rural Elec.*

*Ins. Corp.,* 48 F.3d at 297 (quoting *United States Fidelity & Guar. Co. v. Murphy Oil USA,* 21 F.3d 259, 261 (8th Cir.1994), in turn quoting *Public Affairs Assocs., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962) (*per curiam* )).

### C. Colorado River Abstention

The *Colorado River* abstention doctrine, enumerated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), grants a federal court the discretion to avoid duplicative litigation in federal court of a matter more properly decided in parallel litigation in state court. *See Beavers,* 151 F.3d at 841 n. 7; *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297. However, "the potential for conflict" between a federal action and a parallel state action, standing alone, does not "justify staying of the exercise of federal jurisdiction" under the *Colorado River* abstention doctrine. *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297 (citing *Colorado River,* 424 U.S. at 816, 96 S.Ct. 1236). As the Supreme Court explained in *Colorado River,*

> Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. As between federal district courts, however, though no precise rule has evolved, the general principle is to avoid duplicative litigation. This difference in general approach between state-federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

*Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236 (citations omitted). Thus, rather than simply considering potential "conflict" between state and federal litigation, "[t]he policies underlying *Colorado River* abstention are 'considerations of "[w]ise judicial administration," giving regard to conservation of judicial resources and comprehensive disposition of litigation.' " *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297–98 (quoting *Colorado River,* 424 U.S. at 817, 96 S.Ct. 1236, in turn quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)).

Indeed, as the Supreme Court explained in *Colorado River*—and the Eighth Circuit Court of Appeals has repeatedly reiterated—a federal court may abstain in order to conserve federal judicial resources only in "exceptional circumstances." *See, e.g., Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236; *Dominium Austin Partners, L.L.C.,* 248 F.3d at 727 ("A federal court should decline jurisdiction [on the basis of *Colorado River* abstention] only under exceptional circumstances."); *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297 (also stating the "exceptional circumstances" standard). Those "exceptional circumstances" must be such that " 'repair to the State court would clearly serve an important countervailing interest.' " *Federated Rural Elec. Ins. Corp.,* 48 F.3d at 297 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr.,* 460 U.S. 1, 14, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), in turn quoting *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236). This is true, "even if diversity of citizenship is the only jurisdictional foundation," as is the case in the present federal lawsuit between Central States and CPI and McCullough. *BASF Corp. v. Symington,* 50 F.3d 555, 557 (8th Cir.1995).[5]

---

**5.** In *Symington,* the Eighth Circuit Court of Appeals recognized that the circuits were then split on the question of whether the Colorado River/*Moses H. Cone* exceptional circumstances test applies to declaratory

If the prerequisites for abstention are met, the Eighth Circuit Court of Appeals has explained,

> Determination of the existence of "exceptional circumstances" requires evaluation of several factors (the *Colorado River/Moses H. Cone* factors), as follows:
>
> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.
>
> [*Murphy Oil USA*], 21 F.3d at 263.

*Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297; *accord Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir. 2002) (citing *Federated Rural Elec. Ins. Corp.* for the pertinent factors).

 Before the court can analyze whether there exist exceptional circumstances warranting abstention, the court must determine if the concurrent proceedings are parallel. *In re Burns & Wilcox, Ltd.*, 54 F.3d 475, 477 (8th Cir.1995) (stating, "A parallel state court proceeding is a necessary prerequisite to use of the *Colorado River* factors.") (citing *Baskin v. Bath Township Bd. of Zoning Appeals*, 15 F.3d 569, 571–72 (6th Cir.1994)).

## D. Is Colorado River Abstention Appropriate?

The parties dispute whether the prerequisite for *Colorado River* abstention is even satisfied in this case, with McCullough arguing that the two proceedings are "parallel" and Central States and CPI contending that they plainly are not. Even assuming that the state and federal proceedings are parallel, the parties also dispute which way nearly every factor in the *Colorado River/Moses H. Cone* abstention analysis ultimately weighs. First, the court will consider whether the "parallelism prerequisite" is satisfied.

### 1. The "parallel litigation" prerequisite

#### a. Arguments of the parties

In its motion to dismiss, or alternatively stay the proceedings, McCullough contends that the "parallelism prerequisite" for *Colorado River* abstention has been satisfied by virtue of the fact that the Iowa lawsuit is interdependent with the Nebraska lawsuit. McCullough alleges the Stock Repurchase Agreement replaced his Employment Agreement upon which Central States's and CPI's Iowa lawsuit in federal court is based.[6] Because both the Nebraska and Iowa actions require a court to analyze the Stock Repurchase Agreement

judgment cases. *Symington*, 50 F.3d at 557. However, the rule that exceptional circumstances are required for *Colorado River* abstention, even in diversity cases, appears to have survived the Supreme Court's subsequent clarification of the standard for abstention otherwise applicable in federal declaratory judgment cases in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

6. In its 12(b)(3) Motion to Dismiss For Improper Venue and Alternative Motion to Stay Proceedings, McCullough refers to the Stock Repurchase Agreement as the "Replacement Agreement," and the Employment Agreement as the "Original Agreement." For purposes of this order, the court will refer to the contracts as the Stock Repurchase Agreement and Employment Agreement, as they appear on the actual contractual agreements.

in order to determine whether it replaced McCullough's Employment Agreement, McCullough argues that Nebraska law, not Iowa law, is relevant to this determination and the lawsuits should be maintained in the Nebraska state court. In making this assertion, McCullough does not address the validity of the forum selection clause in the Stock Repurchase Agreement identifying Nebraska, not Iowa, as the proper forum. Moreover, the validity of the forum selection clause is not squarely before the court by the current motion and the court, in turn, does not address it here. Thus, McCullough contends that the two contemporaneous lawsuits involve identical parties and substantially the same issues.

Central States and CPI, however, argue that the Iowa and Nebraska lawsuits simply are not "parallel," making it unnecessary for the court to consider abstention further. Central States and CPI argue that, while the Nebraska lawsuit involves breaches of the Stock Repurchase Agreement and Addendum, the Iowa lawsuit involves breaches of the Employment Agreement, an entirely separate contractual agreement. In support of their argument, Central States and CPI advance that material terms of McCullough's employment, like his rate of compensation, are provided for in the Employment Agreement, but are not addressed in the Stock Repurchase Agreement and Addendum. In addition, Central States and CPI assert that Iowa law governs the Iowa lawsuit. McCullough admits as much in his brief in support of his motion to dismiss or stay, recognizing the choice-of-law provision in the Employment Agreement identifying Iowa as the governing law. Furthermore, Central States and CPI claim that it "strains the imagination" to discern why Nebraska law would apply to an action based upon breach of the Iowa Trade Secrets Act, Iowa Code § 550.2(4), and breaches of fiduciary duties committed by McCullough in Iowa while he was an Iowa

resident employed by CPI, an Iowa corporation. Pl.'s Resistance, at 13. In addition, because the lawsuits are premised on different contracts and facts, Central States and CPI argue that McCullough's attempt to characterize the two lawsuits as "parallel" because of McCullough's allegation that the Stock Repurchase Agreement replaced, or extinguished, the Employment Agreement is "disingenuous at best."

### b. Parallelism

As noted above, the Eighth Circuit Court of Appeals has recognized that "[a] parallel state court proceeding is a necessary prerequisite to use of the *Colorado River* factors." *In re Burns & Wilcox, Ltd.,* 54 F.3d at 477. However, this court acknowledged recently in *Kingland Sys. Corp. v. Colonial Direct Fin. Group, Inc.,* 188 F.Supp.2d 1102, 1111–12 (N.D.Iowa 2002), the lack of guidance in the Eighth Circuit Court of Appeals's precedent on precisely what constitutes a "parallel state court proceeding" for purposes of *Colorado River* abstention. The court proceeded to look to decisions from other Circuit Courts of Appeals for guidance. The court began its survey of pertinent out-of-circuit precedent with *Baskin,* 15 F.3d at 569, the decision on which the Eighth Circuit Court of Appeals relied in *Burns & Wilcox* for its recognition that "parallel litigation" is a prerequisite to *Colorado River* abstention.

In *Baskin,* the appellate court first clarified that the analysis of the "parallelism" prerequisite looks at the two proceedings as they currently exist, not as they could be modified to mirror each other. *Id.* at 572 (reasoning that, " 'While it may be true . . . that [the state court proceeding] *could* be modified so as to make it identical to the current federal claim, that is not the issue here. The issue is whether [the state court proceeding], as it *currently* exists, *is* a parallel, state-court proceed-

ing.'") (quoting *Crawley v. Hamilton County Comm'rs,* 744 F.2d 28, 31 (6th Cir.1984), with emphasis in *Crawley* ). Moreover, even where the claims arose out of "the same basic facts," the court considered "parallelism" in terms of whether one of the actions, as it then existed, could afford "complete relief," observing that, where the state court could not afford some of the relief available in the federal forum, the federal court should not abstain. *Id.* (involving different aspects of a zoning variance and requests for different kinds of relief).

Decisions from other circuits considering "parallelism" are also helpful, and are generally consistent with the analysis of the "parallelism" question in *Baskin.* All courts appear to agree that "parallelism" is a prerequisite to *Colorado River* abstention. *See, e.g., Dittmer v. County of Suffolk,* 146 F.3d 113, 118 (2d Cir.1998) ("The principles of *Colorado River* are to be applied only in situations 'involving the contemporaneous exercise of concurrent jurisdictions.'") (quoting *Kirkbride v. Continental Cas. Co.,* 933 F.2d 729, 734 (9th Cir.1991)). However, while the court in *Baskin* referred to "identity" of parties and issues, most other courts define "parallelism" for purposes of *Colorado River* abstention in terms of "*substantially* the same parties" litigating "*substantially* the same issues." *See, e.g., Al–Abood v. El–Shamari,* 217 F.3d 225, 232 (4th Cir.2000); *Allen v. Board of Educ., Unified Sch. Dist. 436,* 68 F.3d 401, 402 (10th Cir.1995); *New Beckley Mining Corp. v. International Union, UMWA,* 946 F.2d 1072, 1073 (4th Cir.1991), *cert. denied,* 503 U.S. 971, 112 S.Ct. 1587, 118 L.Ed.2d 306 (1992); *Day v. Union Mines, Inc.,* 862 F.2d 652, 655 (7th Cir.1988); *but see National Union Fire Ins. Co. of Pittsburgh v. Karp,* 108 F.3d 17, 22 (2d Cir.1997) ("Federal and state proceedings are 'concurrent' and 'parallel' for purposes of abstention when the two proceedings are essentially the same; that

is, there is an identity of parties, and the issues and relief sought are the same."). On the other hand, all courts appear to agree that mere "commonality of subject matter does not amount to the 'contemporary exercise of concurrent jurisdictions.'" *See Dittmer,* 146 F.3d at 118 (quoting *Kirkbride,* 933 F.2d at 734).

In *Gannett Co., Inc. v. Clark Constr. Group, Inc.,* 286 F.3d 737, 742–43 (4th Cir.2002), the Fourth Circuit Court of Appeals held, *de novo,* that the two actions were *not* parallel. The court defined parallelism according to its previous enumeration in *New Beckley Mining Corp.,* 946 F.2d at 1073, "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." *Id.* at 742. The court applied this rule to Gannett's contention that the two actions were not parallel, and found that the federal contract action and the state lien action involved "different issues with different requisites of proof." *Id.* The court determined that the "State Lien Action requires the equity court to ascertain the validity and amount of the underlying debt, which involves demonstrating that a contract exists for the work performed," and therefore, "is not dependent on questions of breach of contract, which will be resolved only through the separate breach of contract action." *Id.* (citations omitted). Furthermore, the court found that because the actions sought different remedies, they were not substantially similar. *Id.* at 743. In addition to the lien, the party in the state lien action sought foreclosure on the property. The party in the federal contract action instead sought compensatory damages for the alleged breach of contract. The appellate court noted that the equity court in the state lien action possessed the power to adjudicate the breach of contract issues, arguably rendering the state lien action and federal contract action parallel, but did not make such a determi-

nation because the parties did not seek such relief in the state action. *Id.* at 743 & n. 4. In deciding that the two actions were not parallel proceedings, the appellate court cited *Al–Abood v. El–Shamari,* 217 F.3d at 232–33.

In *Al–Abood,* the Fourth Circuit Court of Appeals held that the two actions were *not* parallel, even though the party seeking abstention argued that " 'each party's claims in one case were defenses in the other.' " *Al–Abood,* 217 F.3d at 232 (quoting the party's brief). Even though the parties in the two suits were "substantially the same," and even though "the two proceedings ha[d] certain facts and arguments in common," the appellate court held that the district court had "no duty to examine the various abstention factors," because "the legal issues [were] not substantially the same." *Al–Abood,* 217 F.3d at 232–33 (citing *McLaughlin v. United Va. Bank,* 955 F.2d 930, 935 (4th Cir.1992), as stating that, although the two actions involved similar claims and there were facts in common, the actions were not parallel, because neither the parties nor the legal theories were the same, and *New Beckley Mining,* 946 F.2d at 1074, as noting that "some factual overlap does not dictate that proceedings are parallel"). Instead, in the state proceeding, "the central issues concern[ed] whether a trust was created and whether trust funds were confiscated by Al–Abood," but in the federal proceeding, "the central issues ... concern[ed] whether the El–Shamaris were fiduciaries with regard to Al–Abood and whether the El–Shamaris committed fraudulent acts to bilk money from Al–Abood." *Id.* at 232–33. In *Dittmer,* the Second Circuit Court of Appeals found no "parallelism" where none of the plaintiffs in the federal action were involved in the state case, and that state case presented "distinctly different facts and predominately state law claims," while the federal action involved federal constitutional claims, which the federal court would have to determine regardless of the outcome of the state case. *Dittmer,* 146 F.3d at 118. On the other hand, the Second Circuit Court of Appeals held that state and federal proceedings *were* "parallel" where "(1) the primary claim for declaratory relief raised by [one federal plaintiff] in the [federal] action will be raised and decided in the state action, and (2) [the federal plaintiffs] are parties in both suits." *Karp,* 108 F.3d at 22 (discretionary abstention in a declaratory judgment case).

#### c. Analysis

■ The court concludes that the Iowa lawsuit in federal court and the Nebraska lawsuit in state court are not "parallel" as required for consideration of *Colorado River* abstention. This is true, despite the fact that the parties in the two actions are not just "substantially similar," but identical, and the claims in the two actions arguably originate from the same basic facts of the parties' employment relationship.

McCullough's voluntary termination from CPI in July 2001, served as the common triggering event for the filing of the Nebraska and Iowa actions. However, the court finds that, as in *Baskin,* the "required identity of ... issues" is not present—nor are the issues "substantially similar," *see, e.g., Gannett,* 286 F.3d at 742—even though the two actions may have arisen out of "the same basic facts," because the two disputes involve different aspects of that dispute. *See Baskin,* 15 F.3d at 572. The Nebraska lawsuit involves the question of whether Central States and CPI breached the Stock Repurchase Agreement and Addendum, which identifies events compelling the sale and purchase of McCullough's shares to CPI, the determination of the purchase price of the shares, and the payment of the purchase price. According to the Stock Repurchase Agreement, McCullough could

voluntarily terminate his employment at any time and CPI would have to buy his stock under the conditions set forth therein. On the other hand, the Iowa lawsuit in this federal court involves the question of whether McCullough breached the Employment Agreement when he allegedly removed, retained, and misappropriated confidential business and proprietary trade secret information and property of CPI as a consequence of his employment with Fluid Solutions, Inc. *See id.* (even though the two actions arose out of "the same basic facts" of the federal plaintiff's zoning variance, the two disputes involved different aspects of the zoning variance, one action contesting whether the variance went too far, and the other action contesting whether the variance went far enough); *accord Al–Abood,* 217 F.3d at 232–33 (even though the parties were "substantially the same," and the two proceedings had facts and arguments in common, "the legal issues [were] not substantially the same," where one action involved whether a trust was created and trust funds confiscated by one party, and the other involving whether the other parties were fiduciaries who committed fraudulent acts); *Dittmer,* 146 F.3d at 118 (the two claims involved distinctly different facts and applicable law, and thus were not parallel).

Although both the Stock Repurchase Agreement and the Employment Agreement contain "covenant not to compete" clauses, the language of the clauses is not identical. In addition, the Stock Repurchase Agreement does not contain a "proprietary information" clause, whereas such a clause is contained in the Employment Agreement. Moreover, Central States's and CPI's causes of action are based upon these clauses as delineated in the Employment Agreement without reference to the Stock Repurchase Agreement.

■■■ As in *Baskin,* " '[w]hile it may be true . . . that [the state court proceeding] *could* be modified so as to make it identical to the current federal claim, that is not the issue here' "; rather, " '[t]he issue is whether [the state court proceeding], as it *currently* exists, *is* a parallel, state-court proceeding.' " *Baskin,* 15 F.3d at 572 (quoting *Crawley,* 744 F.2d at 31, with emphasis in *Crawley* ). McCullough asserts that only the Nebraska lawsuit could provide complete relief between the parties, because the lawsuit on the Stock Repurchase Agreement and Addendum *must* be brought in that forum, while the action on the Employment Agreement *could* be brought there. *See id.* (likening "parallelism" to the "availability of complete relief").[7] However, the Nebraska lawsuit, as

7. Central States and CPI contend that the Nebraska state court would deny their requested remedies of punitive damages and attorneys fees, both of which are available in Iowa. *See* IOWA CODE § 550.4(2) ("If a person commits a willful and malicious misappropriation, the court may award exemplary damages . . ."); *Graves v. Iowa Lakes Cmty. College,* 639 N.W.2d 22, 28 (Iowa 2002) (permitting award of punitive damages for breach of contract if the breach is committed intentionally and maliciously); *Hamilton v. Mercantile Bank of Cedar Rapids,* 621 N.W.2d 401, 407 (Iowa 2001) (discussing award of punitive damages in context of breach of fiduciary duty claim); *see also* IOWA CODE § 550.6 (allowing award of actual and reasonable attorney fees under Iowa Trade Se-

crets Act). McCullough argues that the Nebraska state court, under general choice of law rules, must apply Iowa law as provided for in the choice of law clause contained in the Employment Agreement. However, the court notes that if McCullough should succeed in his argument that the Stock Repurchase Agreement and Addendum replaced the Employment Agreement, the Nebraska state court would not apply Iowa law, under general choice of law rules, because the Stock Repurchase Agreement includes a provision that is both a choice-of-law and a forum selection clause favoring Nebraska.

Even if the Nebraska state court determines that the Stock Repurchase Agreement did not replace the Employment Agreement, and

it *currently* exists, will not necessarily do so because Central States and CPI do not forge their claims against McCullough in the form of counterclaims or defenses. Thus, the Nebraska lawsuit as it currently exists will not dispose of Central States's and CPI's present claims under the Employment Agreement if McCullough succeeds on the merits of his claim for specific performance of the Stock Repurchase Agreement and Addendum which he alleges replaced the Employment Agreement. If McCullough's claims fail on the merits, nothing about the Nebraska action even addresses whether McCullough breached the Employment Agreement.

█ In light of the differences in the claims in the two actions, the court does not find anything dispositive of the "parallelism" question in the fact that the present action does not involve any federal law or federal constitutional claims. *Compare Dittmer,* 146 F.3d at 118 (actions were not parallel where the state court action was based on state law, but the federal action included federal constitutional claims that the federal court would have to resolve regardless of the outcome in state court). What law applies to the claims in each lawsuit is one of the factors in *Colorado River, see, e.g., Federated Rural Elec. Ins.*

*Corp.,* 48 F.3d at 297, but differences in applicability of state or federal law to the claims in the two actions is not a necessary distinction on the "parallelism" question. *See Al–Abood,* 217 F.3d at 232–33 (the source of the law governing the claims in the two actions was not mentioned in the determination that the actions were not parallel; *Baskin,* 15 F.3d at 572 (same)).

Moreover, the relief sought by Central States and CPI, and by McCullough, is different in the two suits. *See Baskin,* 15 F.3d at 572 (considering whether the two lawsuits sought different relief); *see also Gannett,* 286 F.3d at 743. In the Nebraska lawsuit, McCullough seeks specific performance pursuant to the terms of the Stock Repurchase Agreement and Addendum as well as recovery of the purchase price of his stock, and unpaid wages. On the other hand, Central States and CPI seek a permanent injunction against McCullough enforcing the provisions of the Employment Agreement and any resulting monetary damages, interest, and costs. *Compare Baskin,* 15 F.3d at 572 (the two lawsuits were not "parallel," where they involved different kinds of relief).

Because the Iowa and Nebraska lawsuits are not "parallel," the prerequisite

---

therefore Iowa law governs Central States's and CPI's claims, Central States and CPI assert that the Nebraska state court will refuse to submit their claim for punitive damages because punitive damages contravene the Nebraska Constitution, and thus violate Nebraska public policy. *Enron Corp. v. Lawyers Title Ins. Corp.,* 940 F.2d 307, 313 (8th Cir.1991) (finding the relevant policies of Nebraska and the Virgin Islands regarding punitive damages as proper focus of court's inquiry where the "most significant relationship" approach supported application of both states' laws, but subsequently applying Nebraska law); *Nebraska Nutrients, Inc. v. Shepherd,* 261 Neb. 723, 626 N.W.2d 472, 516 (2001) (applying Arizona law to proceedings because of choice of law provision in the agreement, but refusing to submit claim for punitive damages un-

der Arizona law, because against Nebraska public policy).

Because the court found that the private and public interest factors in the *forum non conveniens* analysis did not decidedly weigh in favor of either alternative as the more convenient venue for the present action, and as a result, did not disturb the plaintiffs' chosen forum, Iowa, on grounds of *forum non conveniens,* the court did not decide whether Nebraska state court was an adequate alternative forum. With regard to the issue of parallelism, the court can only suppose, based upon Nebraska Courts' precedent, and in the absence of contrary authority, that the Nebraska state court would not permit submission of Central States's and CPI's claims for punitive damages.

for *Colorado River* abstention is not present in this case. *See Burns & Wilcox*, 54 F.3d at 477. Furthermore, while the parties have addressed the applicability of the first-filed rule to the present litigation, the court's holding that the concurrent actions are not parallel obviates the need to fully analyze the applicability of the first-filed rule here. *See Midwest Motor Express, Inc. v. Central States Southeast and Southwest Areas Pension Fund*, 70 F.3d 1014, 1017 (8th Cir.1995) (first-filed rule " 'gives priority, for purposes of choosing among possible venues when **parallel litigation** has been instituted in separate courts, to the party who first establishes jurisdiction.' ") (quoting *Northwest Airlines*, 989 F.2d at 1006). However, a brief discussion is warranted.

### E. Application of the First–Filed Rule

This court has previously discussed the "first-filed rule" and the exceptions to it. *See Wells' Dairy, Inc. v. Estate of J.P. Richardson*, 89 F.Supp.2d 1042, 1057–58 (N.D.Iowa 2000) (declaring first-filed rule only applied to concurrent cases in federal court); *Med–Tec Iowa, Inc., v. Nomos Corp.*, 76 F.Supp.2d 962, 967 (N.D.Iowa 1999) (entertaining the first-filed action); *MidAmerican Energy Co. v. Coastal Gas Marketing Co.*, 33 F.Supp.2d 787, 790 (N.D.Iowa 1998) (entertaining the second-filed action); *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 922 F.Supp. 1334, 1345–54 (N.D.Iowa 1996) (entertaining the first-filed action), *aff'd*, 119 F.3d 688 (8th Cir. 1997), *cert. denied*, 522 U.S. 1029, 118 S.Ct. 629, 139 L.Ed.2d 609 (1997); *Brower v. Flint Ink Corp.*, 865 F.Supp. 564, 567–73 (N.D.Iowa 1994) (entertaining the second-filed action). In the present case, the parties do not disagree about what lawsuit was commenced first. Central States and CPI admit that McCullough filed the Nebraska state court action based on the Stock Repurchase Agreement before Central States and CPI filed federal litigation in this court based on the Employment Agreement. The disagreement here centers on whether the first-filed rule only applies to concurrent cases in federal court. In addition, the parties disagree about whether one of the first-filed rule's exceptions is applicable to the circumstances of this case. Before turning to an analysis of the parties' disputes, the court will provide an overview of the first-filed rule.

### 1. The first-filed rule

The Eighth Circuit Court of Appeals has recognized the first-filed rule as follows:

> The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982), the first-filed rule should apply.

*Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1005 (8th Cir.1993) (quoting *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir.1990)); *see Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501, 503 n. 2 (8th Cir.1999) (stating this rule and citing *Northwest Airlines* ); *Midwest Motor Express, Inc.*, 70 F.3d at 1014; *Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Retirement Sys.*, 57 F.3d 638, 641 (8th Cir.1995) (same). Thus, the first-filed rule requires that the concurrent cases be brought by the same parties and embrace the same

issues. *See Midwest Motor Express*, 70 F.3d at 1017; *accord Keymer*, 169 F.3d at 503 n. 2 ("The first-filed rule gives priority, when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction in order to conserve judicial resources and avoid conflicting rulings."); *Anheuser–Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417, 419 (8th Cir.1999) ("The well-established rule is that in cases of concurrent jurisdiction, 'the first court in which jurisdiction attaches has priority to consider the case.'") (quoting *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir.1990)) (internal quotations omitted).

### 2. *Separate courts*

As noted above, one of the disagreements in this litigation centers on the parties' dispute over whether the first-filed rule only applies to concurrent cases in federal court. Central States and CPI claim that the first-filed rule does not apply to this action, commenced in the Federal District Court for the Northern District of Iowa, because the first case filed, which is allegedly of concurrent jurisdiction, was filed in Nebraska state court. McCullough argues that there is no inherent reason why the first-filed rule should not apply equally when the cases of alleged concurrent jurisdiction are filed in a state court and a federal court.

The court recognizes, and the parties address in their briefs, the split among the federal courts regarding the applicability of the first-filed rule to concurrent litigation filed in a state court and a federal court. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982) ("the court initially seized of a controversy should be the one to decide the case.... It should make no difference whether the competing courts are both federal courts or a state and federal court with undisputed concurrent jurisdiction.") (citations omitted); *United Artists Theatre Circuit, Inc. v. Federal Communications Comm'n*, 147 F.Supp.2d 965, 979 n. 12 (D.Ariz.2000) (stating that the first-filed rule "is no less applicable when the courts set in competition against each other are a federal court and a state court."); *but see Flack v. U.S.*, 1996 WL 628317, at *1 (D.Ariz. Aug.14, 1996) ("The doctrine of federal comity is a discretionary doctrine which permits one federal district court to decline to exercise jurisdiction over a matter if a complaint has been filed in another federal district court.") (citing *Church of Scientology v. U.S. Dep't of Army*, 611 F.2d 738, 749 (9th Cir.1979)) (overlooking first-filed rule on grounds of judicial economy between litigation in D.C. Circuit Court of Appeals and Federal District Court for the Central District of California, but stating "In its classic formulation, the [federal] comity doctrine permits a district court to decline jurisdiction over a matter if a complaint has already been filed in another district."); *see Commercial Union Ins., Cos. v. Torbaty*, 955 F.Supp. 1162, 1163 n. 1 (E.D.Mo.1997) ("Typically, the first-filed rule is applied when an action is filed in two federal courts. However, the rule is applied with equal force when an action is filed in federal court and state court.") (citing *Merrill Lynch*, 675 F.2d at 1173); *Andersen Windows, Inc. v. Delmarva Sash & Door Co.*, 2002 WL 1424570, at *5 (D.Minn. June 28, 2002) (applying first-filed rule with equal force to a concurrent action in federal and state court) (citing *Commercial Union Ins., Cos.*, 955 F.Supp. at 1163 n. 1).

This court most recently considered the first-filed rule in *Wells' Dairy, Inc.*, 89 F.Supp.2d at 1057–58, construing the phrase "separate courts," according to the Eighth Circuit Court of Appeals' interpretation in *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir.

1985) (citing *Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir.1982)), as meaning only federal courts of concurrent jurisdiction and declined to apply the rule where one suit was a federal declaratory judgment action and the other, a state court action. *See Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir.1993) ("The discretionary power of the federal court in which the first-filed action is pending to enjoin the parties from proceeding with a later-filed action in another federal court is firmly established."); *see also Supreme Int'l Corp. v. Anheuser–Busch, Inc.*, 972 F.Supp. 604, 606 (S.D.Fla.1997) (stating "the 'first-filed' rule, which holds that when parties have instituted competing or parallel litigation in separate federal courts, the court initially having jurisdiction should hear the case") (citing *Northwest Airlines, Inc.*, 989 F.2d at 1006).

Moreover, an examination of legal precedent among the federal courts reveals overwhelming support for the application of the first-filed rule to concurrent actions only as between federal courts. However, the federal courts stated as much without addressing why the first-filed rule does not apply to concurrent actions between a state court and a federal court. In *Hospah Coal Co.*, 673 F.2d at 1163, the Tenth Circuit Court of Appeals had to resolve the issue of whether jurisdiction attached first in a federal district court in Texas or a federal district court in New Mexico. The court, in holding that jurisdiction attached first in the federal district court in Texas where the first complaint was filed, noted that "Both parties recognize the general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Id.* (citing *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir.1972) ("It is well established in this Circuit that where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court.")); *see also Reisman v. Van Wagoner Funds, Inc.*, 2002 WL 1459384, at *1 (D.Del. June 7, 2002) ("More than fifty years ago, the Third Circuit Court of Appeals adopted the 'first-filed rule' where '[i]n all cases of federal concurrent jurisdiction the court which first had possession of the subject must decide it.' ") (citing *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824))); *Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F.Supp.2d 21, 29 (D.D.C.2002) (citing *Washington Metro. Area Transit Auth. v. Ragonese*, 617 F.2d 828, 830 (D.C.Cir.1980) ("where two cases between the same parties on the same cause of action are commenced in two different Federal courts, the one which is commenced first is to be allowed to proceed to its conclusion first") (citations omitted)); *Essex Group, Inc. v. Cobra Wire & Cable, Inc.*, 100 F.Supp.2d 912, 914 (N.D.Ind.2000) ("Generally, when mirror-image suits are filed in two federal districts, the first case filed takes priority.") (citing *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 748 (7th Cir.1987)); *Jackson v. Jackson, KLLM, Inc.*, 2000 WL 517254, at *1 (E.D.La.2000) ("the essence of the 'first-filed' rule is deference to the federal district court where the suit was initially filed") (citing *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24, et al.*, 751 F.2d 721, 729 (5th Cir.1985) ("a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court")); *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir.2000) (quoting *Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.1987) ("Where identical actions are proceeding concurrently in two federal courts ... the first filed action is generally preferred in a choice-of-venue decision.")); *Cedars–Sinai*

*Med. Ctr. v. Shalala,* 125 F.3d 765, 769 (9th Cir.1997) ("Under that rule [first to file], when cases involving the same parties and issues have been filed in two different districts, the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy."); *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1025 (2d Cir.1991) (quoting *Meeropol v. Nizer,* 505 F.2d 232, 235 (2d Cir.1974), "The 'first filed' rule states that 'where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action' ").

■■■ Consequently, in the appropriate case, this court would be willing to reevaluate its holding applying the first-filed rule to concurrent actions only as between federal courts. For present purposes, the court declines to do so because of the court's determination that the two actions are not parallel.

### III. CONCLUSION

In conclusion, the court finds that this lawsuit, arising from McCullough's alleged breach of the Employment Agreement, should be litigated in federal court in Iowa, because venue is proper, the forum is not inconvenient, and the two lawsuits are not parallel, rendering inapplicable the first-filed rule and *Colorado River* abstention. Therefore, the motion of defendant McCullough to dismiss or stay the present federal action by plaintiff Central States and CPI in favor of a lawsuit brought by McCullough in Nebraska state court, is **denied.** This action shall proceed in this forum.

**IT IS SO ORDERED.**