**John Franklin WILLIAMS, Peter Martin Williams, and James Oliver Williams, Plaintiffs,**

v.

**SECURITY NATIONAL BANK, Defendant.**

**No. C03–4034–MWB.**

United States District Court, N.D. Iowa, Western Division.

April 26, 2004.

See also, 293 F. Supp.2d 958.

Dana A. Dwiggins, Mark A. Solomon, Lionel, Sawyer & Collins, Las Vegas, NV, Jay Elliott Denne, Stanley E. Munger, Munger, Reinschmidt & Denne, Sioux City, IA, for Plaintiffs.

Glianny Fagundo–Toro, Michael P. Bruyere, Lord, Bissell & Brook, LLP, Atlanta, GA, Maurice B. Nieland, Rebecca A. Nelson, Rawlings Neiland Probasco Killinger Ellwanger Jacobs, et al, Sioux City, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR CONTINUANCE AND STAY

BENNETT, Chief Judge.

888

## TABLE OF CONTENTS

I.    **INTRODUCTION** ................................................888
    A.   **Factual Background** .......................................888
    B.   **Procedural Background** ....................................889
        1.   **The probate action in state court** .................889
        2.   **This federal action** ..............................891

II.   **LEGAL ANALYSIS** ...........................................892
    A.   **Arguments Of The Parties** ................................892
    B.   **Applicable Law** ..........................................895
        1.   **An overview of the "first-filed rule" and "Colorado River abstention"** ...........................................895
        2.   **Which doctrine applies?** ..........................897
        3.   **Application of the doctrine** ......................898
            a.   **Parallelism** ..................................898
            b.   **Other factors** ................................900

III.   **CONCLUSION** ...............................................901

Not for the first time the undersigned wishes that legal terms, like "parallel litigation," could be defined with the same precision as mathematical terms, like "parallel lines." In the present dispute, the defendant trustee asserts emphatically that this federal lawsuit, alleging breach of fiduciary duty by the trustee in the management of a trust, merely "parallels" a probate action that the trustee had already filed in state court for disgorgement of improper distributions from the trust to the income beneficiary. Consequently, the trustee seeks a stay of this federal action in favor of the probate action in state court. The plaintiffs, the remainder beneficiaries of the trust, contend, just as vehemently, that the two lawsuits are at most "overlapping," but certainly not "parallel," so that this action should proceed. One key to the parties' difference of opinion, it seems, is how each side defines "parallel," while another is which "parallel litigation" doctrine applies, the "first-filed rule" or the *"Colorado River* abstention doctrine."

## I. INTRODUCTION

### A. Factual Background

This court has addressed some of the pertinent background to this litigation in a prior published ruling, *Williams v. Security National Bank of Sioux City, IA.,* 293 F.Supp.2d 958 (N.D.Iowa 2003). However, some of that background bears repeating here, and some additional facts are also relevant to the present dispute over whether this federal action should be stayed in favor of a probate action in state court.

On August 16, 1982, Dorothy Pritchard Williams established a trust, later amended on February 29, 1984, which the court, like the parties, will describe as the DPW Trust. At times pertinent to this litigation, defendant Security National Bank (SNB) was a co-trustee of the DPW Trust. The parties agree that part of the investment portfolio of the DPW Trust consisted of stock in closely-held Pritchard family corporations, identified as Pritchard Investment Corporation (PICO), Pritchard Associates, and Roanoke Realty Company.[1] Upon Dorothy Williams's death in 1984, Charles Williams became the life in-

---

**1.** This last company apparently has had a variety of names. *See* Answer and Counter-claims, Exhibit B. However, the court will not attempt to trace those name changes here.

come beneficiary of the DPW Trust. Plaintiffs John, Peter, and James Williams are the remainder beneficiaries of the DPW Trust. Therefore, the plaintiffs will be described collectively herein as the Remainder Beneficiaries.

Pursuant to Charles Williams's instructions, the income payments from the DPW Trust were automatically transferred to the Charles K. Williams Trust (the CKW Trust), which Charles had created in 1972. SNB was also the Trustee of the CKW Trust from the time of its inception until 2003. Charles himself was the life beneficiary of the CKW Trust. After Charles's death, one-half of the assets of the CKW Trust were held in trust for the benefit of his surviving spouse, Pilar Williams, who received all of the income, with any undistributed income at the time of her death to be paid to her estate. The remainder beneficiaries of the CKW Trust, who were to receive the remaining assets of the CKW Trust upon Charles's death, are the Remainder Beneficiaries of the DPW Trust and four additional beneficiaries, Marcia Williams Cortese, Richard Gale Williams, Deborah Williams Fisher, and Patricia Williams Eichelberger.

At the heart of the litigation in both the present action and a related action in Iowa probate court is what happened when PICO, one of the investments of the DPW Trust, was partially liquidated in 1991. At the time of the partial liquidation of PICO, over $1.4 million of funds from that liquidation were paid to the DPW Trust. The parties apparently do not now dispute that some or all of this sum represented "return of principal" rather than "income" to the DPW Trust. Nevertheless, at the time, SNB distributed all of that sum from the DPW Trust to the CKW Trust as "income distributions." Further sums from the PICO liquidation were also distributed from the DPW Trust to the CKW Trust over the following years as "income

distributions." The Remainder Beneficiaries contend that, ultimately, SNB improperly distributed in excess of $1.7 million in DPW Trust principal to the CKW Trust as income distributions in violation of the terms of the DPW Trust and Iowa law.

SNB contends that it learned on February 4, 1992, that it might have improperly treated some of the PICO funds as income to the DPW Trust, rather than return of principal, and consequently, might have improperly distributed those funds to the CKW Trust. SNB notified Charles Williams of that possibility by letter dated February 19, 1992. That letter also stated that the overpayment resulting from return of principal treated as income would be corrected as soon as the final figures were determined. However, SNB took no legal action to correct the problem until SNB filed a lawsuit in Iowa probate court on December 18, 2002, in its capacity as Trustee of the DPW Trust, seeking return from the CKW Trust of the improper distributions.

When Charles Williams died on May 7, 2002, the Remainder Beneficiaries allege that they became entitled to distribution of the remainder of the DPW Trust. This lawsuit involves claims by the Remainder Beneficiaries against SNB for its alleged mismanagement of the DPW Trust over the last two decades, including claims based on improper distributions of DPW Trust principal as "income distributions" to the CKW Trust.

### B. Procedural Background

#### 1. The probate action in state court

On December 18, 2002, SNB filed a petition in probate court in the Iowa District Court for Woodbury County pursuant to IOWA CODE § 633.6202, denominated "In the Matter of The Dorothy Pritchard Williams Trust, and Concerning the Charles K. Williams Trust," Probate No. TRPR 048802. The Remainder Beneficia-

ries contend that SNB only initiated this suit, because of their inquiries regarding the propriety of some "income" payments that SNB had made from the DPW Trust to the CKW Trust during Charles Williams's lifetime.

In its original Petition, SNB prayed principally for the following:

1. For an Order determining that [SNB] has made an overpayment from the Dorothy Pritchard Williams Trust into the Charles K. Williams Trust in the amount of $517,666.00, and that the Charles K. Williams Trust should pay said amount to the Dorothy Pritchard Williams Trust.

SNB's Exhibit 2, Original Petition in Probate No. 048802, Prayer at ¶ 1.[2] In an Amended Petition filed May 12, 2003, after this federal action had been commenced, SNB again prayed for a determination that it had made an "overpayment" from the DPW Trust to the CKW Trust in the amount of $517,666.00, and for an order requiring the CKW Trust to pay this amount to the DPW Trust. *Id.,* Amended Petition in Probate No. 048802, Prayer at ¶ 2. In addition, SNB prayed for an order determining that SNB had made additional overpayments from the DPW Trust to the CKW Trust for tax years 1993, 1994, 1995, 1996, 1997, and 1999 totaling $288,542.00, and requiring the CKW Trust to pay this amount to the DPW Trust. *Id.* at ¶ 2.[3] Finally, in a Second Amended and Substituted Petition, filed February 4, 2004, SNB prayed for the following:

1. For an order determining that it has made overpayments from the Dorothy Pritchard Williams Trust to the Charles K. Williams Trust in the total amount of $1,753,152.00 and that the Charles K. Williams Trust should pay said amount to the Dorothy Pritchard Williams Trust.

2. For an Order setting the time and place of hearing and prescribing notice to all of the beneficiaries of the Charles K. Williams Trust and the Co–Trustee of the Dorothy Pritchard Williams Trust, as set forth above.

3. For such other and further relief as may be just and proper in the premises.

SNB's Exhibit 2, Second Amended Petition in Probate No. TRPR 04882, Prayer, ¶¶ 1–3.

The plaintiffs in this federal action filed an objection and motion for continuance in the state probate action on January 13, 2003, based on SNB's alleged conflict of interest, arising from SNB's position as the Trustee of both the DPW Trust and the CKW Trust. On January 27, 2003, the Iowa Probate Court entered an order continuing the state probate action "to a date to be set in the future at the request of an interested party." *See* SNB's Exhibit 4. On April 29, 2003, SNB notified the CKW Trust beneficiaries of its intention to resign as trustee. On May 12, 2003, SNB filed in the probate action a Resignation of Trustee and Request for Order. *See* SNB's Exhibit 6. A rather protracted search for a new trustee for the CKW Trust ensued. Eventually, on January 23, 2004, the Iowa Probate Court confirmed Wells Fargo Bank of Coeur d'Alene, Idaho, as the Successor Trustee to the CKW Trust. *See* Remainder Beneficiaries' Exhibit D. The parties dispute the reason for

---

**2.** SNB also prayed that the time and place of hearing be set, notice prescribed, a guardian ad litem be appointed for any beneficiaries who may be minors or under other disability, and for such other relief as might be just and proper. *Id.* at ¶¶ 2–4.

**3.** The Amended Petition also prayed for an order setting hearing and prescribing notice and for such other relief as might be just and proper. *Id.* at ¶¶ 2–5.

the lengthy search for a successor trustee: SNB asserts that the delay was caused by the beneficiaries, while the Remainder Beneficiaries assert that the delay was caused by SNB's improper actions, which had made it difficult to find a new trustee willing to take over.

Although a hearing to set a trial date in the state probate action was held on February 12, 2004, no trial date was set owing to Wells Fargo Bank's recent involvement in the matter. Therefore, the state probate action was again continued indefinitely. On February 27, 2004, SNB obtained an order compelling itself to account to the beneficiaries of the DPW Trust and the CKW Trust. No objection has yet been filed to any such accounting.

### 2. This federal action

The Remainder Beneficiaries of the DPW Trust, plaintiffs John Franklin Williams, Peter Martin Williams, and James Oliver Williams, filed their Complaint in this federal action against SNB on May 1, 2003 (docket no. 1). Although the Complaint originally named Security National Corporation as a defendant, Security National Corporation has since been dismissed from this action. The Complaint asserts various claims premised on alleged mismanagement of the DPW Trust by SNB. On July 7, 2003, SNB filed its Answer and Counterclaims (docket no. 16). However, by order dated November 6, 2003, the court dismissed SNB's counterclaims. *See Williams,* 293 F.Supp.2d at 973. On January 29, 2004, SNB was granted leave to file a third-party complaint against John F. Pritchard, Jr. (docket no. 44), but SNB then voluntarily dismissed its third-party complaint on March 11, 2004 (docket no. 60). Thus, the only

claims at issue in this federal action are the Remainder Beneficiaries' claims and the only parties are the Remainder Beneficiaries and SNB.

Count I of the Remainder Beneficiaries' federal Complaint alleges that the Remainder Beneficiaries are entitled to outright distribution of the remaining assets of the DPW Trust, but that SNB has failed to distribute the remaining assets to the Remainder Beneficiaries, which constitutes a breach of fiduciary duty. Count II alleges that SNB breached its fiduciary duty, first, by improperly allocating the return of over $1.7 million of capital of PICO as "income" to the DPW Trust and then distributing that "income" to the CKW Trust and, second, by failing to take reasonable steps immediately to seek reimbursement of the improper distributions. Count III alleges breach of fiduciary duty by "favoring the income beneficiary," *inter alia,* by failing to diversify the assets of the DPW Trust.[4] Count IV alleges that SNB breached its fiduciary duty by self-dealing, based on allegedly improper "income handling fees" charged by SNB from 1984 through 1992. Count V alleges that SNB breached its fiduciary duty by paying estimated estate taxes on amounts not received by the DPW Trust. Count VI alleges that SNB breached its fiduciary duty, for its own self-serving interests, when it liquidated assets of the DPW Trust other than SNB's own securities to pay estate taxes. Count VII alleges that SNB breached its fiduciary duty to account to the Remainder Beneficiaries and to keep them informed. Count VIII alleges that SNB has "statutory liability" to the Remainder Beneficiaries for violation of the duties of a trustee under Iowa Code § 633.4501 and prays for

---

**4.** Pursuant to this court's order dismissing SNB's counterclaims in this federal action, the Remainder Beneficiaries are now estopped to assert any breach of fiduciary duty

by SNB premised on SNB's holding of the closely-held family corporation investments in the DPW Trust. *See Williams,* 293 F.Supp.2d at 973.

remedies pursuant to IOWA CODE §§ 633.4502, 633.4503, and 633.4605, including double damages. The Remainder Beneficiaries ultimately pray for compensatory damages; twice the value of the property that they lost; punitive damages; attorney fees; court costs; and such other relief as the court deems just.

As indicated above, the parties have litigated a motion to dismiss SNB's counterclaims in this action. They have also engaged in substantial discovery. Trial in this matter is currently set to begin on October 11, 2004.

On January 29, 2004, SNB filed in this action its Motion For Continuance And Stay (docket no. 45), in which SNB seeks a continuance of the trial in this federal action and a stay of proceedings in this court in favor of the pending probate action in state court. The Remainder Beneficiaries resisted SNB's motion for continuance and stay on February 17, 2004 (docket no. 48), and SNB filed a reply on February 27, 2004 (docket no. 53) accompanied by supplemental exhibits (docket no. 54). Thereafter, on March 11, 2004, the Remainder Beneficiaries filed a request for oral arguments in which they asserted that SNB's reply raised facts that were not in existence at the time of their resistance and that oral arguments before United States Magistrate Judge Paul A. Zoss on March 10, 2004, on SNB's motion to stay discovery, had elicited facts that are relevant to this court's determination of whether or not this action and the state probate action are "parallel." By order dated April 14, 2004, pursuant to the Remainder Beneficiaries' request, the court set oral arguments on SNB's motion to stay for April 22, 2004. The April 14, 2004, order also directed the Remainder Beneficiaries to file a surreply on or before April 20, 2004, identifying the newly elicited facts that they believe are pertinent to the issue of whether or not the court should grant a continuance and stay. The Remainder Beneficiaries filed the required surreply on April 19, 2004.

The oral arguments took place as scheduled on April 22, 2004. At the oral arguments, the Remainder Beneficiaries were represented by Mark A. Solomon, who argued their position, and Dana A. Dwiggins, both of Lionel, Sawyer & Collins in Las Vegas, Nevada, and by Stanley E. Munger of Munger, Reinschmidt & Denne in Sioux City, Iowa. SNB was represented by Michael P. Bruyere of Lord, Bissell & Brook, L.L.P., in Atlanta, Georgia, who argued SNB's position, and Rebecca A. Nelson of Rawlings, Neiland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, L.L.P., in Sioux City, Iowa. SNB's motion for continuance and stay is now fully submitted.

## II. LEGAL ANALYSIS

### A. Arguments Of The Parties

SNB contends that the present federal action should be stayed in favor of the parallel Iowa probate action for several reasons. First, SNB contends that the Remainder Beneficiaries, instead of pursuing their claims in the Iowa probate action, in which they had already appeared, filed this federal lawsuit to promote two transparent goals: forum shopping; and double recovery, once from the CKW Trust, and once from SNB. Unfortunately, SNB contends, the CKW Trust beneficiaries derailed the Iowa probate action by taking over six months to find a successor trustee. However, SNB contends that the Iowa probate action is now back on track and that that action is the proper one to address the issues of probate law and breach of fiduciary duty raised in this action. SNB also contends that the Remainder Beneficiaries are trying to block SNB's claims in the Iowa probate action, so that they can receive the benefits of any overpayment to the CKW Trust, in their

capacity as beneficiaries of the CKW Trust, *and* recover the value of any overpayment from the DPW Trust from SNB, based on claims of SNB's breach of fiduciary duty as trustee of the DPW Trust. SNB argues that the interested parties and witnesses in the state and federal actions are virtually identical. Moreover, SNB argues that the beneficiaries of the CKW Trust, who are interested parties in the Iowa probate action, are identified as fact witnesses in this federal action. SNB also argues that the two courts would be deciding virtually identical issues, so that a decision in one court is in the best interest of all of the parties. SNB argues that only the claim of alleged breach of fiduciary duty based on favoring the income beneficiary actually distinguishes the claims in the federal action from the claims in the Iowa probate action. However, SNB contends that any fair investigation and determination of the overpayment and repayment issues by the Iowa probate court is a necessary prerequisite to the claims in this federal action. SNB also contends that the Remainder Beneficiaries will not be prejudiced by staying the present action, because the Remainder Beneficiaries are able to appear and fully litigate pertinent issues in the Iowa probate action, even if they are unwilling to do so.

SNB also argues that this federal action should be stayed in favor of the Iowa probate action under either the "first-filed rule" or the "*Colorado River*" abstention doctrine." SNB contends that there is no dispute that the Iowa probate action was filed first or that there is no balance of convenience of the parties or other compelling circumstance that requires departure from the first-filed rule here. As to *Colorado River* abstention, SNB argues that neither forum is inconvenient to the parties; that the threat of piecemeal litigation is substantial; that the actions are "parallel" and that the Iowa probate action is now on track to resolve pertinent issues on the merits; and that state law clearly controls the important issues and, more importantly, that the state forum is adequate to provide all necessary relief.

In response, the Remainder Beneficiaries argue that the Iowa probate action is not a necessary prerequisite to determine the amount of overpayment received by the CKW Trust or to determine that the overpayment should be returned to the DPW Trust. This is so, because the Remainder Beneficiaries characterize SNB's claim in the Iowa probate action as nothing more than a claim for contribution or reimbursement, while the central issue in the federal action is SNB's breach of fiduciary duty. The Remainder Beneficiaries contend that the CKW Trust is not directly liable to the Remainder Beneficiaries of the DPW Trust for the improper distributions by SNB from the DPW Trust, but the Remainder Beneficiaries have a direct action against SNB for breach of fiduciary duty for making such improper distributions.

The Remainder Beneficiaries also assert that neither the first-filed rule nor the *Colorado River* abstention doctrine is applicable here. The Remainder Beneficiaries argue that the first-filed rule simply doesn't apply to concurrent actions in state and federal courts, but only to two actions in different *federal* courts. The Remainder Beneficiaries contend that, contrary to SNB's assertions, this court has only applied the first-filed rule to concurrent *federal* actions, because the cases cited by SNB as purportedly involving concurrent state and federal actions actually involved state actions *removed* to federal court. The overwhelming majority of cases from this and other circuits, the Remainder Beneficiaries contend, apply the first-filed rule only to concurrent federal actions. Moreover, the Remainder Beneficiaries contend that the first-filed rule is not ap-

plicable, because the two actions at issue here are simply not "parallel." They assert that, while the sole issue in the Iowa probate action is whether SNB is entitled to reimbursement or contribution from the CKW Trust for amounts of principal that the CKW Trust improperly received as a result of SNB's breach of fiduciary duty, one of *several* issues in this federal action is whether SNB breached its fiduciary duty to the Remainder Beneficiaries by distributing in excess of $1.7 million in DPW Trust principal to the income beneficiary of the DPW Trust. There is no danger of the two courts reaching inconsistent results on any issue, the Remainder Beneficiaries contend, and indeed, it is possible that the Iowa probate court could deny SNB's claims, for example, on estoppel or laches grounds, while this court could still find that SNB breached its fiduciary duty by making improper distributions from the DPW Trust. Not only are the claims and issues in the two actions different, but the Remainder Beneficiaries point out that the parties are different, where the Remainder Beneficiaries in this action are only three of the seven remainder beneficiaries of the CKW Trust interested in the Iowa probate action, and the trustees of the CKW Trust are not parties here.

The Remainder Beneficiaries contend that *Colorado River* abstention is equally inapplicable here, again because the actions are not "parallel," and because the pertinent factors do not weigh in favor of abstention. The Remainder Beneficiaries contend that the fact that the two actions involve the same subject matter is not enough to make them "parallel," and whether the actions are "parallel" looks at how they currently exist, not how they could be modified to mirror each other. Furthermore, even if the Iowa probate action runs its full course, the Remainder Beneficiaries contend that this court will not be left with nothing further to do, but

will instead still have much to resolve. Even if the actions were "parallel," the Remainder Beneficiaries contend that prosecution of separate actions is not "piecemeal litigation," because the two actions are legally and factually severable. They also contend that this action is more advanced than the Iowa probate action, because not all of the interested parties have responded to SNB's petition in the Iowa probate action, and because no discovery has taken place in that action.

In reply, SNB argues that the Remainder Beneficiaries' contention that the two actions are not parallel is "incredible." SNB points out that Wells Fargo Bank, as the new trustee for the CKW Trust, has asserted in the Iowa probate action that the two actions involve factual and legal issues that are similar and related and that discovery in the two actions should be coordinated. SNB also argues that the Iowa probate action should dispose of or subsume most, if not all, of the Remainder Beneficiaries' claims in this action, including claims of breach of fiduciary duty. SNB points out that the Remainder Beneficiaries have objected to SNB's petition in Iowa probate court, in part, to protect their rights and any claims that they may have against SNB for additional damages, so that merely characterizing their claims in this action as claims of breach of fiduciary duty does not escape the scope of the Iowa probate action. Moreover, SNB argues that the two actions involve virtually the same facts, witnesses, evidence, and issues—particularly the key issue of whether distributions to the CKW Trust by SNB were improper. SNB also argues that the first-filed rule applies here, because this court has recognized that there is a split in authority on the issue of whether that rule applies to concurrent actions in state and federal courts, or only to concurrent actions in two federal courts, and has expressed its willingness to re-

evaluate application of the first-filed rule to the former circumstances. The principles at issue in the first-filed rule, SNB contends, plainly should apply to concurrent litigation in state and federal courts as well as to concurrent litigation in different federal courts. SNB also argues that the proceedings are parallel under the *Colorado River* abstention doctrine, because the parties are similar and the litigation derives from the same set of facts. SNB argues that the Remainder Beneficiaries' contention that discovery is more advanced in this action is a red herring, because the scope of discovery in both actions is identical and all discovery obtained by SNB in this action is being shared with Wells Fargo in the Iowa probate action. Pursuit of separate lawsuits, SNB argues, is wasteful.

In their surreply, the Remainder Beneficiaries assert that, by obtaining a consent order in the Iowa probate action compelling itself to account to the beneficiaries of the two trust, SNB was attempting to manufacture "parallelism" between the two lawsuits, but that even with that consent order, "parallelism" does not exist. The Remainder Beneficiaries reiterate that "parallelism" is determined on the basis of the actions as they exist, not as they could be made to mirror each other. They also argue that the accounting does not make the actions parallel, even if it compels return of improper disbursements from the CKW Trust back to the DPW Trust, because the Iowa probate action does not involve any claims based on SNB's own liability for misconduct, and the two actions still do not involve the same parties.

### B. Applicable Law

#### 1. An overview of the "first-filed rule" and "Colorado River abstention"

In *Central States Industrial Supply, Inc. v. McCullough*, 218 F.Supp.2d 1073 (N.D.Iowa 2002), this court provided the following concise statement of the "first-filed rule":

> The Eighth Circuit Court of Appeals has recognized the firstfiled rule as follows:
>
>> The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982), the first-filed rule should apply.
>
> *Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1005 (8th Cir.1993) (quoting *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir.1990)); *see Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501, 503 n. 2 (8th Cir.1999) (stating this rule and citing *Northwest Airlines* ); *Midwest Motor Express, Inc. [v. Central States Southeast and Southwest Areas Pension Fund]*, 70 F.3d [1014,] 1014 [ (8th Cir.1995) ]; *Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Employees Retirement Sys.*, 57 F.3d 638, 641 (8th Cir.1995) (same). Thus, the first-filed rule requires that the concurrent cases be brought by the same parties and embrace the same issues. *See Midwest Motor Express*, 70 F.3d at 1017; *accord Keymer*, 169 F.3d at 503 n. 2 ("The first-filed rule gives priority, when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction in order to conserve judicial

resources and avoid conflicting rulings."); *Anheuser–Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417, 419 (8th Cir.1999) ("The well-established rule is that in cases of concurrent jurisdiction, 'the first court in which jurisdiction attaches has priority to consider the case.'") (quoting *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir.1990)) (internal quotations omitted).

*Central States Indus. Supply, Inc.*, 218 F.Supp.2d at 1091–92.

In the same decision, this court also summarized the principles of "*Colorado River* abstention," as follows:

The *Colorado River* abstention doctrine, enumerated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), grants a federal court the discretion to avoid duplicative litigation in federal court of a matter more properly decided in parallel litigation in state court. *See Beavers [v. Arkansas State Bd. of Dental Exam'rs]*, 151 F.3d [838,] 841 n. 7 [ (8th Cir.1998) ]; *Federated Rural Elec. Ins. Corp. [v. Arkansas Elec. Coops., Inc.]*, 48 F.3d [294,] 297 [ (8th Cir.1995) ]. However, "the potential for conflict" between a federal action and a parallel state action, standing alone, does not "justify staying of the exercise of federal jurisdiction" under the *Colorado River* abstention doctrine. *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297 (citing *Colorado River*, 424 U.S. at 816, 96 S.Ct. 1236, 47 L.Ed.2d 483). As the Supreme Court explained in *Colorado River*,

Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. As between federal district courts, however, though

no precise rule has evolved, the general principle is to avoid duplicative litigation. This difference in general approach between state-federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

*Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (citations omitted). Thus, rather than simply considering potential "conflict" between state and federal litigation, "[t]he policies underlying *Colorado River* abstention are 'considerations of "[w]ise judicial administration," giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297–98 (quoting *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236, in turn quoting *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)).

Indeed, as the Supreme Court explained in *Colorado River*—and the Eighth Circuit Court of Appeals has repeatedly reiterated—a federal court may abstain in order to conserve federal judicial resources only in "exceptional circumstances." *See, e.g., Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236; *Dominium Austin Partners, L.L.C. [v. Emerson]*, 248 F.3d [720,] 727 [ (8th Cir. 2001) ] ("A federal court should decline jurisdiction [on the basis of *Colorado River* abstention] only under exceptional circumstances."); *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297 (also stating the "exceptional circumstances" standard). Those "exceptional circumstances" must be such that "'repair to the State court would clearly serve an important countervailing interest.'" *Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr.*, 460

U.S. 1, 14, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), in turn quoting *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236). This is true, "even if diversity of citizenship is the only jurisdictional foundation...." *BASF Corp. v. Symington*, 50 F.3d 555, 557 (8th Cir.1995).

If the prerequisites for abstention are met, the Eighth Circuit Court of Appeals has explained,

> Determination of the existence of "exceptional circumstances" requires evaluation of several factors (the *Colorado River/Moses H. Cone* factors), as follows:
>
> (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.
>
> [*United States Fidelity & Guar. Co. v. Murphy Oil USA* ], 21 F.3d 259, 263 [ (8th Cir.1994) ].

*Federated Rural Elec. Ins. Corp.*, 48 F.3d at 297; *accord Cedar Rapids Cellular Tel., L.P. v. Miller*, 280 F.3d 874, 879 (8th Cir.2002) (citing *Federated Rural Elec. Ins. Corp.* for the pertinent factors).

Before the court can analyze whether there exist exceptional circumstances warranting abstention, the court must determine if the concurrent proceedings are parallel. *In re Burns & Wilcox, Ltd.*, 54 F.3d 475, 477 (8th Cir.1995) (stating, "A parallel state court proceeding is a necessary prerequisite to use of the *Colorado River* factors.") (citing *Baskin v. Bath Township Bd. of Zoning Appeals*, 15 F.3d 569, 571–72 (6th Cir. 1994)).

*Central States Indus. Supply, Inc.*, 218 F.Supp.2d at 1084–85 (footnote omitted).

## 2. Which doctrine applies?

■ In *Central States*, this court addressed a specific point of contention also raised here: Does the first-filed rule apply only to concurrent litigation in two federal courts, or does it also apply to concurrent cases in state and federal courts? *See id.* at 1092 ("[O]ne of the disagreements in this litigation centers on the parties' dispute over whether the first-filed rule only applies to concurrent cases in federal court."). This court noted, in detail, the split among federal courts regarding the applicability of the first-filed rule to concurrent litigation filed in state and federal courts. *Id.* at 1092–94. This court also noted that it had previously held that, under the first-filed rule, litigation pending in "separate courts" means only federal courts of concurrent jurisdiction, and that the first-filed rule is thus inapplicable where one suit is a federal action and the other is a state court action. *Id.* at 1092–93 (citing *Wells' Dairy, Inc. v. Estate of J.P Richardson*, 89 F.Supp.2d 1042, 1057–58 (N.D.Iowa 2000)). As SNB contends, however, this court then noted that, "in the appropriate case, this court would be willing to reevaluate its holding applying the first-filed rule to concurrent actions only as between federal courts," but found that it did not need to do so in that case, because the two actions were not "parallel." *Id.* at 1094.

In the meantime, the Eighth Circuit Court of Appeals seems to have settled the

question in *Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684 (8th Cir.2002). In *Smart*, the court addressed one party's contention that "the district court should have declined to exercise its jurisdiction and deferred to the pending state court action 'under the so-called "first-filed" rule.'" *Smart*, 307 F.3d at 686–87. The court rejected this argument:

> But "first filed" is not a "rule." It is a factor that typically determines, "in the absence of compelling circumstances," which of two concurrent federal court actions should proceed to judgment. *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990) (quotation omitted). The first-filed factor is often dominant in determining which *federal* court should proceed when the parties to an arbitration award have filed cross motions to vacate and confirm the award in different district courts. *See Cortez Byrd Chips [v. Bill Harbert Constr. Co.]*, 529 U.S. [193,] 198, 120 S.Ct. 1331, 146 L.Ed.2d 171 [ (2000) ]. However, when the issue is whether a federal court should defer to a pending suit in state court, as in this case, the order in which jurisdiction was obtained, while still a relevant factor in applying the abstention doctrine, is far less apt to be determinative because of the federal court's "virtually unflagging obligation" to exercise its jurisdiction. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *see Moses H. Cone*, 460 U.S. at 21–23, 103 S.Ct. 927.

*Smart*, 307 F.3d at 687 (emphasis in the original). Thus, *Smart* stands for the proposition that the first-filed *rule* is simply inapplicable here, where the concurrent actions are in state and federal courts, not in two federal courts, although which action was filed first remains a *factor*. *Id*.

Indeed, while the principles underlying the "first-filed rule" may seem, at first blush, to be equally applicable to concurrent litigation in state and federal courts as they are to concurrent litigation in two federal courts, the Supreme Court has already explained that the difference in treatment—*i.e.*, that as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction, but as between two federal courts, the first-filed action takes priority—"stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. Therefore, this court reiterates its prior holdings that the "first-filed rule" is not applicable where the concurrent actions are in state and federal courts, rather than two *federal* courts.

### 3. Application of the doctrine

#### a. Parallelism

■ The court finds that the key issue here, as in *Central States*, is whether or not the two lawsuits are "parallel," and this is so whether the "first-filed rule" or the "*Colorado River* abstention doctrine" applies. *See Central States Indus. Supply, Inc.*, 218 F.Supp.2d at 1086–91 (parallelism under *Colorado River*), 1091–92 (noting that parallelism is a requirement of the first-filed rule, as the two cases must be brought by the same parties and embrace the same issues), & 1094 (declining to reconsider application of the first-filed rule to concurrent actions in state and federal courts, "because of the court's determination that the two actions are not parallel"). Notwithstanding SNB's purported incredulity at the Remainder Beneficiaries' assertion that the two suits are not parallel, the court has no hesitation in agreeing with the Remainder Beneficiaries on this point.

The court finds no discussion by the Eighth Circuit Court of Appeals of the "parallelism" requirement since this court considered it in *Central States.* Therefore, this court again looks to its own prior decision for a summary of applicable standards. As this court explained in *Central States,* "[T]he Eighth Circuit Court of Appeals has recognized that '[a] parallel state court proceeding is a necessary prerequisite to use of the *Colorado River* factors.'" *Id.* at 1086 (quoting *In re Burns & Wilcox, Ltd.,* 54 F.3d at 477). The "parallelism" analysis "looks at the two proceedings as they currently exist, not as they could be modified to mirror each other." *Id.* (citing *Baskin v. Bath Township Bd. of Zoning Appeals,* 15 F.3d 569, 572 (6th Cir.1994)). Thus, "even where the claims arose out of 'the same basic facts,' ... 'parallelism' [is considered] in terms of whether one of the actions, as it then existed, could afford 'complete relief.'" *Id.* at 1087 (citing *Baskin,* 15 F.3d at 572). While some courts require "identity" of issues, others find the "parallelism" requirement is satisfied by "*substantially* the same parties" litigating "*substantially* the same issues." *Id.* Even so, "all courts appear to agree that mere 'commonality of subject matter does not amount to the "contemporary exercise of concurrent jurisdictions."'" *Id.* (quoting *Dittmer v. County of Suffolk,* 146 F.3d 113, 118 (2d Cir.1998), in turn quoting *Kirkbride v. Continental Cas. Co.,* 933 F.2d 729, 734 (9th Cir.1991)). Thus, courts consider, for example, whether the two actions involve "'different issues with different requisites of proof,'" in which case, they are not "parallel." *Id.* (quoting *Gannett Co., Inc. v. Clark Constr. Group, Inc.,* 286 F.3d 737, 742 (4th Cir.2002)). Courts have also held that actions in which "'each party's claims in one case were defenses in the other'" were not "parallel," where the "central issues" in the two cases differed. *Id.* at 1088 (quoting *Al–Abood v. El–Shamari,* 217 F.3d 225, 232–34 (4th Cir.2000)).

On the other hand, two cases *are* "parallel," for example, where the primary claim for relief in one action will be raised and decided in the other, and the parties are the same in both suits. *Id.* (citing *National Union Fire Ins. Co. of Pittsburgh v. Karp,* 108 F.3d 17, 22 (2d Cir.1997)).

In light of these standards, the court is not persuaded by SNB's argument that the actions at issue here are "parallel" on the ground that the Remainder Beneficiaries have appeared in the Iowa probate action and could have brought their claims in this proceeding in that one. *Id.* at 1086 (the "parallelism" analysis looks at the two proceedings as they currently exist, not as they could be modified to mirror each other). Nor is the court persuaded by SNB's argument that there is some, even substantial, factual overlap between the two suits. *See id.* at 1087 ("'[C]ommonality of subject matter does not amount to the "contemporary exercise of concurrent jurisdictions."'") (quoting *Dittmer,* 146 F.3d at 118, in turn quoting *Kirkbride,* 933 F.2d at 734). Even though the claims in the two actions arose out of "the same basic facts," at least as to the Remainder Beneficiaries' claims relating to improper distribution of principal of the DPW Trust to the CKW Trust, it is clear that the Iowa probate action cannot afford "complete relief." *Id.* (citing *Baskin,* 15 F.3d at 572). This is so, because the claims in the two actions are substantially different: In the Iowa probate action, the claim is for disgorgement by the income beneficiary of distributions from the DPW Trust that were in violation of the terms of the Trust and Iowa law, but in this action, the claims are for breach of fiduciary duty against the Trustee of the DPW Trust for mismanagement, in several respects, of the DPW Trust. These two actions thus involve "'different issues with different requisites of proof.'" *See id.* (quoting *Gannett Co., Inc.,* 286 F.3d at 742).

Even where there is overlap in the elements of proof, the "central issues" in the two cases differ dramatically. *Id.* at 1088 (citing *Al-Abood,* 217 F.3d at 232–34). Specifically, in the Iowa probate action, there is no requirement to prove breach of fiduciary duty by the Trustee to establish improper distributions from the DPW Trust—indeed, there is no requirement to prove tortious conduct at all in that action—while in this action, breach of fiduciary duty, *i.e.,* tortious conduct by the Trustee, is the central focus of nearly all of the claims. Thus, the court is not even convinced that the Iowa probate action is in any way a necessary prerequisite to the claims in this action. *Cf. id.* (cases are "parallel," for example, where the primary claim for relief in one action will be raised and decided in the other). Furthermore, the remedies in the two actions, if claims are proved, flow from different parties: In the Iowa probate action, the relief will take the form of disgorgement of improper distributions *from the income beneficiary of the DPW Trust,* whereas, in this action, the relief will take the form of damages *from the tortfeasor Trustee, SNB.* The claims are also subject to different defenses, because relief in the Iowa probate action may be barred on equitable grounds, where SNB apparently knew that some distributions from the DPW Trust had been improper in 1992, but took no action for over a decade.

Finally, the court notes that the *parties* in the two actions are not even *substantially* the same. *See id.* at 1087–88. The parties in the present action are the Remainder Beneficiaries of the DPW Trust and SNB. The parties in the Iowa probate action, on the other hand, are the DPW Trust and the CKW Trust. SNB is a "party" to the Iowa probate action only in its capacity as Trustee, so that it can bring the action *on behalf of the DPW Trust,* not

as a "party" who will be afforded relief or required to pay any judgment. The beneficiaries of the DPW Trust and the CKW Trust are obviously interested parties in the Iowa probate action, but only the Remainder Beneficiaries of the DPW Trust and SNB actually have any interest in the present litigation—that is, will be afforded relief, required to bear the burden of any judgment, or otherwise have their rights, property, or interests affected—even if beneficiaries of the CKW Trust may be "fact witnesses" in this action, as SNB contends.

The two actions simply are not "parallel," and the prerequisite for *Colorado River* abstention or application of the first-filed rule is absent. Consequently, SNB's motion for a continuance and stay will be denied.

#### b. *Other factors*

■ As this court noted in *Central States,* assuming the prerequisite of "parallel" actions is satisfied, the pertinent factors in the *Colorado River* abstention analysis are the following: (1) whether there is a res over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights. *Central States Indus. Supply, Inc.,* 218 F.Supp.2d at 1085. Even were the court somehow con-

vinced that the two actions here were "parallel," the other factors in the *Colorado River* abstention analysis do not warrant staying this federal action in favor of the state court action.[5]

First, while it is true that the Iowa Probate Court has jurisdiction over the res of the CKW Trust and the DPW Trust, the present action is an *in personam* action against SNB for tortious conduct, *i.e.*, breach of fiduciary duty. Thus, the first factor does not warrant staying the present action. Second, no convenience-of-the-forum issue is relevant here, where the two courthouses are blocks apart in the same city. Third, there is, properly speaking, no "piecemeal litigation" issue presented here, where the factual overlap does not translate into serial prosecution of claims between identical parties, and even to the extent of the overlap, the claims in this federal action are severable for all of the reasons that the two actions are not "parallel." Fourth, notwithstanding SNB's argument that it is "sharing" discovery conducted in this action with the new trustee in the Iowa probate action, it is readily apparent that this action has made more relative progress, where the Iowa probate action was stalled for a considerable time awaiting the appearance of a successor trustee and that new trustee has been granted additional time to prepare for trial, but this action is set for trial in just a few months and a number of issues have already been litigated. Thus, even though the fifth and sixth factors have no apparent impact in this litigation, the factors that do have an impact weigh in favor of this court retaining jurisdiction and proceeding with this action, notwith-

standing concurrent prosecution of the Iowa probate action. In light of this court's "virtually unflagging obligation" to exercise its jurisdiction, *Colorado River*, 424 U.S. at 817–18, 96 S.Ct. 1236, and the lack of countervailing factors, SNB's motion for a continuance and stay will be denied.

## III. CONCLUSION

Notwithstanding the lack of mathematical precision with which the term "parallel litigation" has been defined by the courts, this court has no hesitation in concluding that the two concurrent actions at issue here are *not* "parallel." Therefore, neither the "first-filed rule" nor "*Colorado River* abstention" applies. Moreover, even if the two actions were "parallel," the *Colorado River* abstention doctrine—the doctrine that would then be applicable here, where the concurrent cases are in state and federal courts—does not require this court to abstain.

THEREFORE, SNB's January 29, 2004, Motion For Continuance And Stay (docket no. 45) is **denied.**

**IT IS SO ORDERED.**

---

**5.** Again, the court reiterates its holding that the first-filed rule is not applicable here, because the concurrent actions at issue are not in different *federal* courts, but are in state and federal courts. Therefore, this portion of the court's analysis considers only *Colorado River* abstention.